**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Montreal, Maine & Atlantic Railway, Ltd.,<br>    Debtor<br><br><br>Robert E. Keach, solely in his capacity as<br>Estate representative of the post-effective<br>Date estate of Montreal, Maine & Atlantic<br>Railway, Ltd.,<br><br>        Plaintiff<br><br><br>Canadian Pacific Railway Company, and<br>Soo Line Railroad Company,<br><br>        Defendants | Bk. No. 13-10670-PGC<br>Chapter 11<br><br><br><br><br><br><br><br><br><br>Adv. No. 14-1001-PGC |

**DECISION AND ORDER**

**I.    Introduction**

This adversary proceeding is rooted in the July 6, 2013, freight train derailment in Lac-Mégantic, Quebec, which resulted in scores of deaths and other casualties, as well as extensive economic losses and environmental damage.  Here, Robert E. Keach (the "Estate Representative") solely in his capacity as the Estate Representative of the post-effective date estate of Montreal, Maine & Atlantic Railway, Ltd. (the "Debtor"), claims that Canadian Pacific Railway Company ("CP") and Soo Line Railway Company ("Soo Line") (together, the "Defendants") are responsible for that accident under various legal theories, including negligence and negligent misrepresentation.  As this case travels to trial, the Defendants filed a Motion to Bind Plaintiff to Prior Judicial Admissions with Incorporated Memorandum of Law (the

"Motion") (D.E. 548).  In the Motion, they request that the Court clarify certain aspects of the Debtor's insolvency at the time of the derailment under the doctrines of judicial estoppel and judicial admissions.  For the reasons explained below, the Defendants have not overcome the hurdles necessary for the Court's application of either doctrine.  Therefore, the Defendants' Motion is denied.

## II.    Relevant Facts & Procedural History

The Court begins with an examination of the nature and circumstances surrounding the Estate Representative's prior statements in separate adversary proceedings because the Defendants' theories of relief center on the consequences of those statements in this proceeding.

On January 30, 2014, the Estate Representative commenced the present adversary proceeding against several defendants who are no longer parties to this action.[1]  Almost a year later, the Estate Representative filed the First Amended Complaint, adding CP as a defendant (D.E. 95.) and in 2016, the Estate Representative filed a Third Amended Complaint (the "Complaint") (D.E. 230), adding Soo Line as a defendant.  The Complaint contained four counts: Negligence (Count I), Breach of Contract/Breach of Warranty (Count II), Negligent Misrepresentations (Count III), and Disallowance of Claim (Count IV).  CP and Soo Line moved to dismiss the Complaint on October 7, 2016, and the Court heard oral arguments on December 20, 2016.  On July 7, 2017, the Court issued its Memorandum of Decision (D.E. 285), which was amended on January 29, 2021 (D.E. 560), and dismissed Count II of the Complaint.

Earlier, on July 27, 2015, the Estate Representative commenced the <u>Keach v. Caisse de Depot Et Placement Du Quebec, et al.</u>, adversary proceeding against various defendants who are

---

[1] Those defendants were World Fuel Services Corp., World Fuel Services, Inc., Western Petroleum Co., Work Fuel Services Canada, Inc., and Petroleum Transport Solutions, LLC.  None of the original defendants, all of whom have settled, remain parties to the current proceeding.

not parties to this proceeding (the "Caisse de Depot Adversary"), seeking the avoidance and recovery of certain unauthorized dividends and fraudulent transfers (the "Caisse Complaint") (D.E. 1, Adv. Pro. No. 15-1014).  In the Caisse de Depot Adversary, the Estate Representative focused on certain transactions that took place prior to early 2011, and the Debtor's insolvency at the time of those transactions.  For example, he made the following statements in the Caisse Complaint:

> 166.    As evidenced by the numerous amendments to NWPA, the Debtor was thinly capitalized and overburdened with debt from the issuance of the notes.
>
> 167.    The Debtor had inadequate capital contributions.
>
> 168.    The Debtor was insolvent at all times relevant hereto on a balance sheet basis.
>
> 169.    The Debtor was insolvent at all times relevant hereto on the basis that the Debtor was unable to pay its debts as they came due.

Caisse Complaint, ¶¶ 166-69.  The Estate Represtative also stated that "[t]he Debtor was insolvent at the time of the 2011 Transactions[,]" and that "[t]he Debtor was insolvent at the time of any payments to Earlston on account of the Term B Note." See Caisse Complaint, ¶¶ 204, 211.

On September 17, 2015, the various defendants in the Caisse de Depot Adversary filed their respective motions to dismiss the proceeding (the "Caisse Dismissal Motions") (D.E. 23-25, Adv. Pro. No. 15-1014).  The Caisse Dismissal Motions "collectively raise[d] several arguments as to why Counts II through IV of the Caisse Complaint should be dismissed." See Hearing Re: Opinion of Court, D.E. 77, at 24-25.  On November 10, 2015, the Estate Representative filed an Omnibus Objection to Motions to Dismiss Complaint (Memorandum of Law Incorporated) (the "Caisse Dismissal Objection") (D.E. 42, Adv. Pro. No. 15-1014).  In the Caisse Dismissal

Objection, the Estate Representative stated that the "Debtor . . . was thinly capitalized and financially distressed for its entire history[,]" and that "investors were frequently reminded of the Debtor's inability to pay its debts as they became due . . . ." Caisse Dismissal Objection, at 2. The Estate Representative further stated that "the Debtor was insolvent from its creation through the Sale of the Lines, and the payment of the Investors' Notes is best (and appropriately) viewed as an unlawful dividend in an insolvent company[,]" and that "events subsequent to the Sale of the Lines did not render the Debtor solvent (nor would that matter)." Caisse Dismissal Objection, at 3. He maintained that "[s]uggestions that the Debtor's oil-by-rail business (which does not appear in the [Caisse] Complaint) suddenly rendered the Debtor solvent are similarly irrelevant, and, based upon the Trustee's investigation, wrong[,]" and that "[f]or the avoidance of doubt, it is the Trustee's position, upon information and belief, that the Debtor was never solvent." Caisse Dismissal Objection, at 5, 6 n.2.

On December 14, 2016, the Court scheduled the Caisse Dismissal Motions and related filings for a hearing on December 22, 2016, at which time it would issue its decision. During the hearing, the Court granted the Caisse Dismissal Motions in part, dismissing Counts II through IV and V of the Caisse Complaint. See Hearing Re: Opinion of Court, D.E. 77, at 25-26, 34-38. The Court denied the Caisse Dismissal Motions as to Count I of the Caisse Complaint. See Hearing Re: Opinion of Court, D.E. 77, at 31-34. Because Count I of the Caisse Complaint did not include any statements regarding the Debtor's insolvency following the 2011 Termination, the Court did not rely on such statements when denying the Caisse Dismissal Motions as to that count.

On October 29, 2020, the Defendants filed their Motion, characterizing the Estate Representative's statements in the Caisse de Depot Adversary as binding judicial admissions and

4

asserting that the Estate Representative should be judicially estopped from arguing that the Debtor was ever solvent.  On November 12, 2020, the Estate Representative filed his []Opposition to Defendants' Motion to Bind Plaintiff to Prior Judicial Admissions (the "Opposition") (D.E. 549), challenging the Defendants' description of his statements in the Caisse Complaint and Caisse Dismissal Objection as judicial admissions and the application of the doctrine of judicial estoppel to the facts of this case.  On November 18, 2020, the Defendants filed their Reply Memorandum in Support of Motion to Bind Plaintiff to Prior Judicial Admissions (the "Reply") (D.E. 550), emphasizing their judicial admissions argument.

During the hearing on November 19, 2020, the Court questioned the parties about their respective arguments, the elements of each theory and associated burdens of proof.  D.E. 552. The next day, the Defendants filed a Supplemental Authority in Support of Motion to Bind Plaintiff to Prior Judicial Admissions (the "Supplemental Reply") (D.E. 553).  The Estate Representative filed a Response to Defendants' Supplemental Authority in Support of Motion to Bind Plaintiff to Prior Judicial Admissions (the "Response") (D.E. 554).

### III.     Parties' Positions

#### A.  Defendants' Arguments

The Defendants challenge the Estate Representative's Complaint's damages analysis, which is based on the Debtor's "going concern" or enterprise value of $30,593,373 (Opposition, Exhibit A), with two separate and distinct theories.  First, they seek to undermine the Estate Representative's expert's enterprise value analysis by binding him to statements made in the Caisse de Depot Adversary regarding the Debtor's insolvency, which they characterize as judicial admissions.  Next, the Defendants argue that the Estate Representative should be judicially estopped in this proceeding from arguing that the Debtor was ever solvent based upon

his statements in other proceedings.  This argument suggests that the issue of the Debtor's insolvency, at any time, and the Estate Representative's estimated enterprise value of $30,593,373 are mutually exclusive.

B. The Estate Representative's Arguments

Initially, the Estate Representative's argument focused on the inapplicability of the doctrine of judicial estoppel in this case, specifically addressing the absence of the doctrine's required elements in the present case.  He asserted that he had not advocated prior inconsistent positions, that the Court had not accepted or relied on any evidence of the Debtor's insolvency postdating the January 4, 2011, transaction at issue in the Caisse de Depot Adversary, and that he has not gained an advantage from post-2011 transaction facts.  Central to his argument are the nature and circumstances surrounding the prior statements made in the Caisse de Depot Adversary.  The Estate Representative addressed each statement the Defendants rely on, emphasizing that the statements were made in a separate adversary proceeding and in relation to the Debtor's insolvency prior to or in early 2011.  He maintains that the statements are not inconsistent with statements or positions made in this proceeding concerning the Debtor's solvency after the 2011 transaction date or up to the time of the derailment.  Indeed, the Estate Representative wholly rejects the Defendants' suggestion that the concepts of insolvency and enterprise value are mutually exclusive.

During the hearing on November 19, 2020, and in his Response, the Estate Representative addressed the Defendants' attempt to bind him to statements made in the Caisse de Depot Adversary as judicial admissions and challenged their reliance on cases binding parties to clear and unambiguous prior statements made outside of briefs or oral arguments.  He further maintained that the First Circuit does not bind parties to statements made outside of pleadings,

6

though he did not cite any First Circuit case law prohibiting this Court from binding a party to prior statements made in other contexts, such as in briefs or oral arguments. Rather, he acknowledged that the First Circuit recognized the judicial admission doctrine's potential application to concessions made at trial. See Response, at 3.

**IV.    Applicable Law & Analysis**

The determination of this Motion necessitates a brief review of the legal theories at play. Although they seem related, the doctrines of judicial estoppel and judicial admissions are not synonymous. Each has its own characteristics and serves a separate function in litigation. While these doctrines can be conflated with each other or other doctrines of the same vein, they are distinct.

  A.  Judicial Estoppel

"*Judicial estoppel* prevents a party who has gained an advantage from a court by taking one position from gaining another advantage by taking an inconsistent position in circumstances that might cast doubt on the integrity of the judicial process." Christopher Klein, Lawrence Ponoroff, Sarah Borrey, Principles of Preclusion and Estoppel in Bankruptcy Cases, 79 Am. Bankr. L.J. 839, 842 (2005) (emphasis in the original). "The purpose of the doctrine is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 743 (2001). Consequently, "judicial estoppel 'is an equitable doctrine invoked by a court at its discretion[.]'" New Hampshire v. Maine, 532 U.S. at 750. See also Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010) (stating that "[t]he doctrine of judicial estoppel is equitable in nature").

Courts have invoked the doctrine of judicial estoppel where:

> a party's later position [is] 'clearly inconsistent' with its earlier position[,] . . . . the party has succeeded in persuading a court to

7

> accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[,] [and] . . . . the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. at 752 (internal citations omitted). "The party proposing an application of judicial estoppel must show that the relevant court actually accepted the other party's earlier representation." Perry v. Blum, 629 F.3d at 11. See also Gens v. Resolution Trust Corp., 112 F.3d 569, 572 (1st Cir. 1997) ( "Judicial estoppel is not implicated unless the first forum accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum . . . .") (emphasis in original). "The showing of judicial acceptance must be a strong one." Perry v. Blum, 629 F.3d at 11 (citing SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 37 and n.8 (1st Cir. 2008) (declining to apply the doctrine of judicial estoppel where the record did not clearly reflect the court's acceptance of plaintiff's prior position)). "The need for a strong showing derives from the maxim that '[j]udicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" Perry v. Blum, 629 F.3d at 11 (quoting Teledyne Indus., Inc. v. Nat'l Labor Relations Bd., 911 F.2d 1214, 1218 (6th Cir. 1990); accord Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996) ("The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances.")).

The Defendants have not shown, nor does the Court find, that the Estate Representative is trying "to play fast and loose with the [C]ourt[]." Perry v. Blum, 629 F.3d at 8 (citing New Hampshire v. Maine, 532 U.S. at 749-50). First, the Estate Representative has not advocated inconsistent positions. His prior statements in the Caisse de Depot Adversary related to the

8

Debtor's insolvency at the time of and prior to the execution of a certain termination and release dated January 4, 2011 (the "2011 Termination"). The Estate Representative explicitly limited the question of the Debtor's insolvency in the Caisse de Depot Adversary to the 2011 Termination, noting that subsequent events were irrelevant and should be disregarded. See Caisse Dismissal Objection, at 5. Consequently, the statements that the Defendants rely on are not inconsistent with statements relating to the Debtor's solvency after the 2011 Termination or with the Estate Representative's expert's report, which quantifies the Debtor's enterprise value as of June 30, 2013. Even if the Estate Representative's statements were not confined to the 2011 Termination, the Debtor's insolvency during one period does not preclude the Estate Representative's damage analysis. The damage analysis is based on a separate determination of the Debtor's enterprise value three and a half years later.

     Nor have the Defendants demonstrated that the Court clearly accepted and specifically relied on or adopted an inconsistent prior position. While the Defendants assert that the Court's denial of the Caisse Dismissal Motions as to Count I of the Caisse Complaint demonstrates acceptance, the Court disagrees. The Court did not rely on statements regarding the Debtor's insolvency or solvency after the 2011 Termination in refusing to dismiss Count I of the Caisse Complaint because the Estate Representative did not include such statements in Count I of its complaint. The Court is also unpersuaded by the Defendants' comments regarding the settlement between the Estate Representative and the Caisse de Depot Adversary defendants. Even if the parties' voluntary settlement had been subject to the Court's approval, that would not amount to a strong showing of judicial acceptance of the Estate Representative's prior position. See Perry v. Blum, 629 F.3d at 12 ("Similarly, it is utterly speculative to suggest that the bankruptcy court, in approving [a] global settlement and allowing [a party] to retain the Notes,

9

accepted each and every one of [the party's] figures. Generally speaking, settlement 'neither requires nor implies any judicial endorsement of either party's claims or theories.'") (quoting In re Bankvest Capital Corp., 375 F.3d 51, 60 (1st Cir. 2004) (quoting Bates v. Long Island R.R. Co., 997 F.2d 1028, 1038 (2d Cir. 1993)))).

Finally, the Defendants have not demonstrated that the Estate Representative gained an unfair advantage in the Caisse de Depot Adversary, or "would [now] derive an unfair advantage or impose an unfair detriment on the [Defendants] if not estopped." New Hampshire v. Maine, 532 U.S. at 743. The records in the relevant proceedings indicate that the Estate Representative's statements concerning the Debtor's insolvency and the focus of the Caisse de Depot Adversary were limited to the periods surrounding the 2011 Termination. Here, the Estate Representative is not asserting that the Debtor was always solvent or solvent at the time of the 2011 Termination. Indeed, his expert's report regarding the Debtor's enterprise value specifically acknowledges the Debtor's historical financial woes. See Opposition, Exhibit A.

B. Judicial Admissions

Judicial admissions are unique and differ from ordinary evidentiary admissions. See United States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975) ("Unlike ordinary admissions, which [may be] admissible [as evidentiary admissions and] rebutted by other evidence, judicial admissions are conclusive on the party making them."). They remove a fact from contention in the litigation. See Harrington v. City of Nashua, 610 F.3d 24, 31 (1st Cir. 2010); see also 2 McCormick On Evid. § 254 (8th ed.) (Judicial admissions "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."); Asarco, LLC v. Noranda Mining, Inc., 844 F.3d 1201, 1212 n.3 (10th Cir. 2017) ("'Judicial admissions' are 'formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the

10

purpose of dispensing with proof of formal matters or of facts about which there is no real dispute.'") (quoting U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 833 n.4 (10th Cir. 2005)). They can arise in answers to complaints, facts asserted in pleadings, stipulations, and discovery responses. See In re Schraiber, 141 B.R. 1000, 1006 (Bankr. N.D. Ill. 1992) (citing American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir.1988); In re Prairie Trunk Ry., 1991 WL 149601 (Bankr. N.D. Ill. July 23, 1991)). Judicial admissions must be clear in order to be binding. See Harrington v. City of Nashua, 610 F.3d at 31. They also must be made in the same proceeding in which a party seeks to have them treated as binding upon the admitting party. See Webster Place Athletic Club, LLC, v. Ramco-Webster Place, LLC (In re Webster Place Athletic Club LLC), 599 B.R. 20 (Bankr. N.D. Ill. 2019) (stating that judicial admissions are binding only in the litigation in which they are made; functioning as evidentiary admissions in other proceedings); Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996) ("[A] statement made in one lawsuit cannot be a judicial admission in another . . . . It can be evidence in the other lawsuit, but no more.).

The Court will not bind the Estate Representative to statements made in the Caisse de Depot Adversary because those statements were not made in this proceeding. Though the Caisse de Depot Adversary and this proceeding arise in the same bankruptcy case, they are separate and independent lawsuits. See Matter of James Wilson Assocs., 965 F.2d 160, 166 (7th Cir. 1992) ("A bankruptcy proceeding . . . is often a conglomeration of separate adversary proceedings that, but for the status of the bankrupt party which enables them to be consolidated in one proceeding, would be separate, stand-alone lawsuits."). As the bankruptcy court in the Northern District of Illinois aptly stated when addressing the distinction:

> "A bankruptcy case is a bundle of related controversies, and trustees must be free to handle each individual controversy separately in

> order to maximize the value of the estate. Treating all the contested matters and adversary proceedings as one controversy and causing the statements made in one matter to be binding in all other matters would be inconsistent with this concept. Therefore, while the statement in the motion may be admissible as an admission of a party-opponent, . . . it is not a judicial admission with conclusive effect because it was not made in the same proceeding."

In re Schraiber, 141 B.R. at 1007 (citations omitted).

Here, the Defendants seek to bind the Estate Representative to statements made in the Caisse de Depot Adversary concerning the Debtor's insolvency during a limited period of time. This is a fatal flaw in the Defendants' effort to have those statements act as judicial admissions here. In declining to bind the Estate Representative to his prior statements as judicial admissions, the Court preserves the issue of the Debtor's historical insolvency for the fact finder. Further, this ruling does not preclude the Defendants from using the Estate Representative's statements in other proceedings in other ways at trial.

**V.    Conclusion**

For the foregoing reasons, and after a detailed review of all relevant records referenced by the parties, the Defendants' Motion is denied. The denial of the Motion does not preclude the Defendants from attempting to use the Estate Representative's statements at trial in other ways.